UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMERICAN STANDARD INC., doing
business through its Trane Commercial Systems
business, a Delaware corporation,

       Plaintiff,                                Civil No. 06-21-HA

       v.                                    OPINION AND ORDER

A-TEMP HEATING AND COOLING, INC.,
an Oregon corporation,

       Defendant.
_____

HAGGERTY, Chief Judge:

      Plaintiff American Standard (plaintiff or AS) filed this declaratory judgment action on

January 5, 2006.  Defendant A-Temp Heating and Cooling (A-Temp or defendant) moves for

dismissal of the action [10].  For the following reasons, defendant's Motion [10] is granted and

this action is dismissed.

1 - OPINION AND ORDER

**BACKGROUND**

Plaintiff American Standard manufactures and distributes "Trane" brand heating and cooling equipment throughout the United States.  Defendant A-Temp is an Oregon corporation in the business of installing and maintaining residential and commercial heating and cooling services.  A third party, Robert G. Davis & Associates, Inc. (Davis) is a primary distributor of Trane equipment in the state of Oregon, and has sold most or all of the Trane products defendant A-Temp has purchased.  Davis and defendant have also competed directly for commercial business in Oregon.

In late December 2003, AS implemented a program requiring certain contractors to become certified under its Applied Systems Contractor Program (ASC Program) before these contractors could purchase Trane equipment.  In August 2005 Davis allegedly refused to sell Trane equipment to defendant A-Temp until A-Temp became certified under the ASC Program. Defendant applied for certification but in September 2005 defendant was advised by plaintiff that certification was denied.  Defendant believes that AS rejected defendant's certification because of representations Davis made about defendant to AS.  Davis allegedly refuses to sell Trane equipment to defendant unless defendant agrees to pay Davis for the services required to program the Trane parts and controls.

In December 2005, defendant A-Temp sent demand letters to AS and to Davis requesting that defendant's application for certification be reconsidered.  Defendant A-Temp threatened legal action if defendant were not certified by January 2, 2006, and included a draft complaint that alleged that AS and Davis violated Oregon antitrust and tort laws.

On January 5, 2006, plaintiff filed this action against A-Temp under the Federal Declaratory Judgment Act.  Plaintiff seeks a declaration that the ASC Program and the decision to deny defendant's application for certification did not violate federal or state antitrust law and did not constitute a business tort.

On January 13, 2006, defendant A-Temp filed a lawsuit in the Circuit Court of Oregon for Marion County against Davis (but not against AS).  Defendant alleges a single claim of intentional interference with business relations.  In that suit, defendant alleges that Davis misrepresented the scope of defendant's business to AS, which prompted AS to deny defendant's application for certification.  This Complaint differs significantly from the draft that defendant included in its demand letters it sent to Davis and AS in December 2005.  Defendant does not name AS as a party and makes no allegations regarding Oregon antitrust claims.

Counsel for plaintiff AS requested a release from defendant assuring AS that A-Temp would not litigate against AS.  Counsel for defendant A-Temp refused to provide this release. Instead, defendant now moves to dismiss this federal suit brought by AS.

**JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT**

The exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is committed to the sound discretion of the federal district courts.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002) (recognizing "the well-accepted rule that the decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court").  A district court should consider whether a properly filed declaratory judgment action should be entertained and should

also record its analysis of this question.  *See Gov. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 (9th Cir.1998) (*en banc*) ("the district court . . . is in the best position to assess how judicial economy, comity and federalism are affected in a given case").

The court in *Dizol* addressed three jurisdictional concerns:

> The Declaratory Judgment Act embraces both constitutional and prudential concerns.  A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution . . . .  It must also fulfill statutory jurisdictional prerequisites . . . .  If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.  This determination is discretionary, for the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority.

*Id*. at 1222-23 (citations, footnote, and internal quotation omitted).

The requirement as to complete diversity between the parties and the amount in controversy is undisputed.  Statutory jurisdiction is proper under 28 U.S.C. § 1332(a).

However, the parties differ as to whether an actual controversy between these parties exists.  Defendant A-Temp asserts that no dispute exists as between A-Temp and AS.  Although A-Temp's original demand letter contemplated a suit against AS, and referred to possible antitrust allegations, A-Temp argues that its subsequent decision to sue only Davis in Marion County establishes that no controversy exists between A-Temp and AS.

Plaintiff, on the other hand, relies upon the initial allegations raised in defendant's demand letter and defendant's original – but never filed – draft complaint, which could be construed as raising antitrust claims.  Plaintiff contends that the demand letter should be

interpreted as a threat from defendant to sue plaintiff for antitrust violations if plaintiff failed to reverse its decision regarding defendant's ASC application.

The Ninth Circuit has addressed the "actual controversy" requirement imposed by the Declaratory Judgment Act, and has acknowledged that the distinction between "abstract questions" and the kinds of controversies contemplated by the Declaratory Judgment Act is one of degree, and that fashioning a precise test for determining whether a sufficient controversy exists is impossible. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Ninth Circuit recognized in that decision the Supreme Court's teaching that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*, quoting *Maryland Cas.*, 312 U.S. at 273.

In *Hunter*, the Ninth Circuit concluded that a plaintiff's on-going manufacturing of items allegedly under another's patent created sufficiently "crystallized" adverse legal positions between manufacturer and patentee to warrant a suit under the Declaratory Judgment Act. *Hunter*, 655 F.2d at 944 (telephone call in which one party told another he would sue if that party purchased allegedly patent-infringing equipment sufficient to establish a *prima facie* case or controversy). The defendant's attempt to later "withdraw" its threat of suit after a Declaratory Judgment action was initiated was deemed irrelevant, but the court noted that the defendant's failure to agree to a non-adversarial position regarding the plaintiff was significant. *Id.* at 945.

This case presents some similarities and some differences.  Obviously, there are no "on-going" patent infringement concerns, and defendant's "threat" of a possible lawsuit against AS diminished significantly after defendant superseded its demand letters by filing a formal Complaint regarding its concerns in Marion County that omitted AS as a named defendant.  Although defendant declined to issue a formal release of possible claims regarding AS, its conduct subsequent to issuing demand letters makes plain that the existing controversy in these circumstances pertains primarily to A-Temp and Davis, and what Davis may or may not have done to interfere with A-Temp's business relations.

Plaintiff's hypothesis that a controversy exists between plaintiff and defendant is drawn solely from defendant's December 2005 demand letter, and any substance or immediacy of that kind of potential controversy dissipated when defendant formalized its Marion County Complaint and omitted plaintiff as a named defendant in doing so.  Even if it could be concluded that a substantial controversy exists between A-Temp and AS, it is questionable whether the "immediacy and reality" of that controversy warrants the issuance of a declaratory judgment.  *Hunter*, 655 F.2d at 942, quoting *Maryland Cas.*, 312 U.S. at 273.

But even assuming (without deciding) that this suit passes the "actual controversy" prerequisite, this court would also have the task of determining whether entertaining the action is appropriate.  The *Huth* court identified the primary factors the district court must consider in determining whether to exercise jurisdiction over a declaratory action.  The court should strive to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.  *Id.* (referring to these as the "*Brillhart* factors"); *see also Dizol*, 133 F.3d at 1225.  In determining

whether entertaining the declaratory judgment action is appropriate, these *Brillhart* factors "remain the philosophic touchstone for the district court." *Dizol*, 133 F.3d at 1225.

Additionally, other considerations may be relevant:

- whether the declaratory action will settle all aspects of the controversy;

- whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue;

- whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage;

- whether the use of a declaratory action will result in entanglement between the federal and state court systems;

- the convenience of the parties; and

- the availability and relative convenience of other remedies.

*Id*. at 1225 n. 5 (citation omitted).

The presence of "parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed" gives rise to a "presumption that the entire suit should be heard in state court." *Id*. at 1225. However, "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief." *Id*.

As noted above, the state proceeding initiated by defendant A-Temp is being advanced against Davis, not AS. The state proceeding cannot therefore be described as precisely "parallel" insofar as the parties in the respective actions differ. However, A-Temp is seeking adjudication of a relationship turned adversarial between it and Davis, and AS can be construed as seeking a declaration that undeniably pertains to the conduct of its affiliate Davis and Davis's relationship

7 - OPINION AND ORDER

to A-Temp.  This suit by AS is plainly prompted by the deteriorating relationship between A-Temp and Davis, and federal courts should generally decline to entertain reactive declaratory actions.  *Id*.; *see also Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp.2d 1075, 1079-80 (D. Or. 2001).

A more precise question presented by A-Temp's motion, moreover, is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."  *Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495).  This court believes that the issues raised in the current controversy regarding A-Temp's business can be best settled in the Marion County proceeding.

Plaintiff's federal Complaint seeks a straightforward validation of the current relationship between defendant and AS and, undeniably, Davis, which plaintiff concedes is "affiliated" with AS and which is a primary distributor of Trane products in Oregon.  Declining federal jurisdiction under these circumstances eliminates any appearance of possible forum shopping on the part of AS on behalf of its affiliate Davis; avoids the specter of duplicative litigation in this court and the Circuit Court of the State of Oregon for Marion County; diminishes the likelihood of any entanglement between these federal and state court systems; and increases the convenience of the parties by permitting the adjudication of the difficulties arising between A-Temp and Trane manufacturers and distributors in one venue.  Maintaining this action to resolve potential federal antitrust issues regarding conduct by AS – issues that only AS raises and are nowhere asserted by A-Temp – will not resolve the claims being heard in Marion County.  Such superfluous litigation, however, could likely entangle the state court's adjudication efforts.  In

8 - OPINION AND ORDER

light of the doubtful existence of an actual present controversy between AS and A-Temp, and, more persuasively, after considering the factors enumerated in *Brillhart*, *Huth* and *Dizol*, this court concludes that federal jurisdiction should be declined in this matter.

**CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss for Lack of jurisdiction [10] is granted.  This action is dismissed.

IT IS SO ORDERED.

Dated this 11   day of May, 2006.


/s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge

9 - OPINION AND ORDER